UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
VISHRANTHAMMA SWARNA,

                         Plaintiff,

            -against-

BADAR AL-AWADI, HALAL
MUHAMMAD AL-SHAITAN, and
STATE OF KUWAIT

                        Defendants.
-----------------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/29/09

06 Civ. 4880 (PKC)

MEMORANDUM AND
ORDER ADHERING TO
PRIOR RULINGS UPON
A MOTION TO
RECONSIDER

P. KEVIN CASTEL, District Judge:

        In a Memorandum and Order dated March 20, 2009 ("Mem. & Order"), the Court granted in part and denied in part plaintiff's motion for a default judgment. Swarna v. Al-Awadi, 06 Civ. 4880(PKC), 2009 WL 773446 (S.D.N.Y. Mar. 20, 2009).[1] The Court held that the Individual Defendants, Mr. Al-Awadi and Ms. Al-Shaitan, were not entitled to diplomatic immunity and therefore granted a default judgment against them, subject only to an inquest to determine damages. Id. at 33. The Court held that the State of Kuwait was entitled to sovereign immunity and therefore denied a default judgment against it and dismissed all claims against Kuwait for lack of subject matter jurisdiction. Id.

        Both parties now move for reconsideration pursuant to Local Civ. R. 6.3 and to alter or amend the judgment pursuant to Rule 59(e), Fed. R. Civ. P. Plaintiff contends that the Court misapplied the FSIA and overlooked certain facts in determining that Kuwait was entitled to sovereign immunity. (Pl. Mem. in Supp. at 1-3.) The Individual Defendants argue that the Court erred in rejecting their diplomatic immunity defense, and further argue that even if they

---

[1] Familiarity with the facts described in the Mem. & Order is presumed. All capitalized terms and abbreviations have the same meaning here as they had there.

were not entitled to diplomatic immunity, a default judgment against them should not have been granted. (Def. Mem. in Supp. at 1.) The Court adheres to its prior rulings in all respects. The motions to reconsider and to alter or amend the judgment are denied.

DISCUSSION

A. Legal Standard

The standards for relief under Local Rule 6.3 and Rule 59(e) are "identical." Griffin Indus., Inc. v. Petrojam, Ltd., 72 F.Supp.2d 365, 368 (S.D.N.Y. 1999). "Local Civil Rule 6.3 elaborates on Fed. R. Civ. P. 59(e) and provides a vehicle for a party to call the court's attention to facts or controlling decisions it believes the court overlooked in reaching its prior decision." Truong v. Charles Schwab & Co., 07 Civ. 8085(SHS), 2009 WL 464452, at *1 (S.D.N.Y. Feb. 24, 2009) (quotation and footnote omitted). "Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." In re BDC 56 LLC, 330 F.3d 111, 123 (2d Cir. 2003) (quotation omitted). While a court may grant a motion for reconsideration "to correct a clear error of law or prevent manifest injustice," Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004) (quotation omitted), "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided," Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. See Devlin v. Transp. Commc'ns Int'l Union, 175 F.3d 121, 131-32 (2d Cir. 1999).

B. Plaintiff's Motion

        Plaintiff seeks reconsideration of the Court's holding that Kuwait was entitled to sovereign immunity.

        1. Labor Law Claims and the Commercial Activity Exception

        Plaintiff first challenges the Court's holding that the "commercial activity exception" to the FSIA, 28 U.S.C. § 1605(a)(2), did not strip Kuwait of sovereign immunity with respect to plaintiff's labor law claims. To establish that Kuwait engaged in commercial activity, plaintiff had to allege facts showing that Kuwait "act[ed] in the manner of a private player within the market," Saudi Arabia v. Nelson, 507 U.S. 349, 360 (1993) (quotations omitted), or performed actions that were "the type of actions by which a private party engages in trade and traffic or commerce," Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992) (emphasis in original) (quotation omitted). Plaintiff argues that the Court overlooked certain facts and misapplied controlling law in holding that the commercial activity exception did not apply.

        First, the Court did not overlook any material facts. Plaintiff argues (1) that "[t]he Court did not address . . . the role of the First Minister in arranging for Ms. Swarna's correspondence to be translated from and into Telegu by one of the domestic workers in his home"; (2) that the Court "did not take account of the fact that Ms. Swarna's passport was retained at the Mission, and was made available to her as necessary by Mission employees"; and (3) that the Court overlooked plaintiff's "evidence that the employment of household employees at sub-standard pay working excessive hours was widespread among Kuwaiti diplomats in the United States." (Pl. Mem. in Supp. at 11-12.) The Court did not overlook these allegations, but

3

rather, did not refer to them in the Mem. & Order because they were immaterial to a determination of the applicability of the commercial activity exception. Assuming that Kuwait permitted Ms. Swarna's correspondence to be translated and permitted her passport to be held at the Kuwait Mission, it does not follow that Kuwait engaged in commercial activity when the Individual Defendants committed the acts that allegedly gave rise to plaintiff's labor law claims. Nor does the fact that many other Kuwaiti diplomats also allegedly mistreat their domestic servants permit the inference that Kuwait engaged in commercial activity. These factual allegations might be relevant to a determination of whether Kuwait would be liable if it were not entitled to sovereign immunity, but they do not answer the necessary antecedent question of whether an FSIA exception applies.

Moreover, even if these alleged actions constituted commercial activity by Kuwait, plaintiff's labor law claims are not "based upon" them. 28 U.S.C. § 1605(a)(2). Plaintiff's labor law claims are based upon the Individual Defendants' alleged failure to pay her minimum wage, failure to pay her overtime, fraudulent misrepresentation of the working conditions in their home, and breach of her employment contract. (See Compl. ¶¶ 124-125, 129, 133, 142, 148.) Plaintiff has not pointed to any facts overlooked by the Court that would establish that these commercial activities were undertaken by Kuwait.

Second, plaintiff has not shown that the Court misapplied controlling precedent. Plaintiff argues that the Court failed to apply Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), because the Court "excluded from the realm of possibility that . . . [Mr.] Al-Awadi was also acting as an agent for Kuwait in his dealings with Ms. Swarna" despite "[p]laintiff's allegation that [Mr.] Al-Awadi is an agent of Kuwait." (Pl. Mem. in Supp. at 10.) However, plaintiff's allegation that Mr. Al-Awadi was acting as Kuwait's agent is a "'legal conclusion'

4

and, as such, [is] not entitled to the assumption of truth." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). The Court accepted all facts alleged in the complaint as true and drew all reasonable inferences in plaintiff's favor, and on that basis, concluded that Mr. Al-Awadi's alleged acts in employing plaintiff were private and not official. Mem. & Order at 14-17. Of course, plaintiff does not challenge that determination insofar as it led to the Court's holding that Mr. Al-Awadi was not entitled to residual diplomatic immunity under Art. 39 of the VCDR. (Pl. Mem. in Supp. at 9 n.3). But apparently ignoring the inconsistency in her own positions, plaintiff contends that Mr. Al-Awadi nevertheless was acting within the scope of his agency relationship with Kuwait and that the commercial activities undertaken by Mr. Al-Awadi in employing plaintiff should be attributed to Kuwait. Yet, if Mr. Al-Awadi had been acting within the scope of his agency relationship with Kuwait when he took these actions, it would seem to follow that his actions were official, not private, and that Mr. Al-Awadi is entitled to residual diplomatic immunity under Art. 39. Even assuming that plaintiff's two seemingly contradictory positions could be reconciled in theory, the facts alleged in this case do not support such a conclusion. For the reasons set forth in detail in the Mem. & Order, Mr. Al-Awadi's acts in employing plaintiff were private and not official. See Mem. & Order at 14-17. None of the facts highlighted in plaintiff's motion to reconsider cast doubt on that holding. Nor do they permit the inference that Mr. Al-Awadi was acting within the scope of his agency relationship with Kuwait when he took those actions. Thus, having successfully established that Mr. Al-Awadi's actions were private and therefore not protected by residual diplomatic immunity, plaintiff has failed to make a plausible showing that those same actions were attributable to Kuwait, so as to strip Kuwait of its sovereign immunity.

2. <u>ATCA Claims and the Torts Exception</u>

Plaintiff next challenges the Court's determination that the "torts exception" to the FSIA, 28 U.S.C. § 1605(a)(5), did not strip Kuwait of sovereign immunity with respect to plaintiff's ATCA claims. First, plaintiff argues that Kuwait is amenable to suit for Mr. Al-Awadi's alleged acts of "trafficking, involuntary servitude, enslavement, forced labor, and sexual slavery," (Compl. ¶ 115) because these acts were committed "within the scope of his office or employment." 28 U.S.C. § 1605(a)(5). Plaintiff argues that the Court failed to consider "[t]he additional facts demonstrating that the mistreatment of domestic workers was widespread among Kuwaiti diplomats." (Pl. Mem. in Supp. at 18.) However, this allegation, which the Court accepted as true for the purposes of the motion to dismiss, does not fairly permit the inference that Mr. Al-Awadi's various acts of assault and abuse furthered Kuwait's official purposes in the United States. <u>See</u> <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1317 (2d Cir. 1995) (under New York law, "an employer is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business"), <u>abrogated on other grounds by</u> <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998); <u>Ross v. Mitsui Fudosan, Inc.</u>, 2 F.Supp.2d 522, 531 (S.D.N.Y. 1998) ("New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context"). Nor does the fact that members of the Kuwait Mission benefited from plaintiff's services from time to time, such as when the Individual Defendants hosted events at their home (<u>see</u> Decl. ¶¶ 13-14, Compl. ¶¶ 47-48, 50), make plausible plaintiff's claim that her alleged enslavement furthered the Kuwait Mission's purposes.

The other facts highlighted in plaintiff's motion to reconsider are similarly deficient.  Plaintiff argues that the Court failed to consider that Kuwait's "decisions regarding compensation of [Mr.] Al-Awadi, the decision to transfer him, and the decision to not repudiate him" were evidence of "the nature and scope of the underlying agency relationship between Kuwait and [Mr.] Al-Awadi."  (Pl. Mem. in Supp. at 14.)  Again, plaintiff makes no effort to reconcile this position with her seemingly contradictory argument that Mr. Al-Awadi was not entitled to residual diplomatic immunity because his tortious actions against plaintiff were private, not official.  But even assuming that it is theoretically possible for a diplomat to take actions that are simultaneously private and thus not "in the exercise of his functions as a member of [a diplomatic] mission," VCDR Art. 39, and are also "within the scope of his office or employment," 28 U.S.C. § 1605(a)(5), the facts alleged in this action support the former inference and not the latter.  That Kuwait reimbursed Mr. Al-Awadi for various expenses, transferred him to a different diplomatic post, and did not publicly repudiate his actions does not show that Mr. Al-Awadi was furthering Kuwait's official purposes when he allegedly assaulted, enslaved and abused plaintiff.  Plaintiff, having successfully shown that Mr. Al-Awadi's acts that allegedly gave rise to her ATCA claims were private and therefore not protected by residual diplomatic immunity, see Mem. & Order at 17-19, has failed to make a plausible showing that those same acts were committed within the scope of his office or employment, so as to strip Kuwait of its sovereign immunity.

Second, plaintiff argues that the Court erroneously found that the torts exception did not strip Kuwait of its sovereign immunity with respect to plaintiff's claim that Kuwait aided and abetted Mr. Al-Awadi's unlawful acts.  Plaintiff's contention that the Court "did not address or apply the Second Circuit's formulation of FSIA's non-discretionary tort exception set forth in

7

Robinson[ v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001)]" is meritless. (Pl. Mem. in Supp. at 13-14.) In Robinson, the Second Circuit explained that "[f]ederal jurisdiction under this FSIA exception to immunity exists . . . only if (i) the plaintiff claims some injury 'caused by the tortious act or omission' of a foreign state; and (ii) this act or omission was 'non-discretionary.'" 269 F.3d at 139-40. This is precisely the standard applied by the Court. See Mem. & Order at 25, 28. Plaintiff argues that the Court incorrectly held that it was a "'discretionary function' to engage in acts that constitute slavery, slavery-like practices, or aiding and abetting such practices." (Pl. Mem. in Supp. at 15.) But the Court made no such holding. Rather, as discussed above, the Court held that these acts allegedly committed by Mr. Al-Awadi were not taken "within the scope of his office or employment" and thus did not constitute "'tortious act[s] or omission[s]' of a foreign state." Robinson, 269 F.3d at 140. In other words, these allegations failed at the first step of the Robinson test, and there was no occasion even to consider whether they were discretionary.

Finally, plaintiff argues that "Kuwait's actions . . . either [were] illegal acts for which Kuwait may be held liable . . . or they [were] operational acts for which Kuwait may be held liable." (Pl. Mem. in Supp. at 17.) Thus, plaintiff contends that the Court erred in finding Kuwait's actions that allegedly aided and abetted Mr. Al-Awadi's unlawful acts to be discretionary in nature and therefore barred by the FSIA. The FSIA's torts exception expressly excludes "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5)(A). Actions are discretionary when they are "grounded in the social, economic, or political policies" of the sovereign or "performed at the planning level of government, as opposed to those at the operational level." In re Terrorist Attacks on Sept. 11, 2001, 392

8

F.Supp.2d 539, 554 (S.D.N.Y. 2005), aff'd 538 F.3d 71 (2d Cir. 2008); Marchisella v. Gov't of Japan, 02 Civ. 10023(DC), 2004 WL 307248, at *2 (S.D.N.Y. Feb.17, 2004) (quotation omitted). Plaintiff does not appear to challenge the Court's determination that Kuwait's decision to transfer Mr. Al-Awadi to a new post, to decline to publicly repudiate his acts, and not to comply entirely with the State Department's Circular Diplomatic Notes were all discretionary acts. See Mem. & Order at 28. But plaintiff argues that "Kuwait's translating Ms. Swarna's correspondence[,] . . . Kuwait's acts in holding Ms. Swarna's passport, its assistance in getting Ms. Swarna's G-5 visa, and its reimbursement of Ms. Swarna's salary" were "either illegal, or operational" and thus non-discretionary. (Pl. Mem. in Supp. at 17-18.) To the contrary, these acts all concerned compensation, benefits, and other services provided by Kuwait to its diplomats. As discussed in the Mem. & Order, such decisions were grounded in Kuwait's sovereign economic and political policies and therefore were characterized properly as discretionary. See Mem. & Order at 27-28; see also Terrorist Attacks, 392 F.Supp.2d at 554. Accordingly, plaintiff has failed to establish a basis for reconsideration of the Court's holding that the FSIA's torts exception did not strip Kuwait of its sovereign immunity with respect to plaintiff's ATCA claims.

C. Defendants' Motion

The Individual Defendants seek reconsideration of the holding that they were not entitled to residual diplomatic immunity, as well as reconsideration of the holding granting plaintiff's motion for a default judgment against them.

1. <u>Residual Diplomatic Immunity of the Individual Defendants</u>

The Individual Defendants first argue that the Court misapplied the law in determining that they were not entitled to residual diplomatic immunity under Art. 39 of the VCDR.[2]  Defendants do not "point to controlling decisions or data that the court overlooked," <u>In re BDC 56 LLC</u>, 330 F.3d at 123, but rather point to a recently-decided case from the United States District Court for the District of Columbia, <u>Sabbithi v. Al Saleh</u>, 605 F.Supp.2d 122 (D.D.C. 2009), which they claim "upheld the same immunity defense under very similar circumstances." (Def. Mem. in Supp. at 8.)  However, the circumstances were dissimilar in a crucial respect.  In <u>Sabbithi</u>, the defendants were diplomats living in the United States at the time they were served with process.  <u>See</u> Statement of Interest of the United States of America, dated July 22, 2008, at 3 n.3, <u>Sabbithi</u>, 605 F.Supp.2d 122 (Doc. #48).  Thus, the key issue was whether the defendants were entitled to the near-absolute diplomatic immunity provided by Art. 31 of the VCDR, not whether they were entitled to the limited residual diplomatic immunity provided by Art. 39.  The court merely held that the narrow commercial activity exception to Art. 31, VCDR Art. 31(1)(c), did not strip the diplomats of their immunity.  <u>Sabbithi</u>, 605 F.Supp.2d at 128-29.  As this Court explained in distinguishing <u>Tabion v. Mufti</u>, 73 F.3d 535, 538 (4th Cir. 1996), the fact that a <u>current</u> diplomat may enjoy diplomatic immunity from employment-related claims by a domestic servant does not mean that a <u>former</u> diplomat faced with the same claims is similarly immune.  <u>See</u> Mem. & Order at 15 n.12.  Thus, the <u>Sabbithi</u> court's determination that the diplomats were entitled to diplomatic immunity under Art. 31 has

---

[2] Oddly, defendants elsewhere assert that "[t]he Court also concluded that the Kuwaiti Diplomats' proposed defenses, including the defense of diplomatic immunity, were 'at best, uncertain.'" (Def. Mem. in Supp. at 1 (quoting Mem. & Order at 31).)  In the paragraph of the Mem. & Order quoted by defendants, the Court stated that it had "already rejected the Individual Defendants' assertion of diplomatic immunity." Mem. & Order at 31.  This defense was held to be inapplicable, not "at best, uncertain."  <u>See id.</u> at 8-20.

no relevance to the issue of whether the Individual Defendants in this case were entitled to residual diplomatic immunity under Art. 39.

However, the Sabbithi court went on to consider whether the diplomats also were entitled to residual diplomatic immunity under Art. 39, noting that they subsequently had left their diplomatic post and returned to their home country. Sabbithi, 605 F.Supp.2d at 130. The court determined that because it already had held that the diplomats' act of employing a domestic servant was not a commercial activity under Art. 31(1)(c), it followed that their conduct "was not performed outside the exercise of defendants' diplomatic functions" under Art. 39. Id. This Court is not persuaded by the Sabithi court's analysis of Art. 39. See also Statement of Interest of the United States of America, dated April 28, 2009, at 10, 12, Baonan v. Baja, Jr., 08 Civ. 5692(VM) (Doc. #31) (explaining that the United States "agrees with the analytical approach of the Swarna court" and "respectfully disagrees with [the Sabbithi court's] analysis"). Whether a plaintiff's claims fall within the "commercial activity" exception of Art. 31(1)(c) -- which applies only to current diplomats -- is separate and distinct from the question of whether a plaintiff's claims are barred by Art. 39 -- which applies only to former diplomats. As explained in the Mem. & Order, the latter question turns on whether the former diplomat's actions were private or official. See Mem. & Order at 14. The fact that certain conduct was not "commercial" within the meaning of Art. 31(1)(c) does not mean that it was "official" under Art. 39. Because the Individual Defendants cannot point to any facts overlooked by the Court that cast doubt on the Court's determination that their actions were private, and not official, there is no basis for reconsidering the holding that they were not entitled to residual diplomatic immunity.

11

2. <u>Default Judgment Against the Individual Defendants</u>

Finally, defendants argue that the "Court's grant of default judgment against the Kuwaiti Diplomats rests largely on the erroneous premise that the Kuwaiti Diplomats never sought to answer the complaint and defend this case on the merits." (Def. Mem. in Supp. at 6.) The basis for their argument is that, on August 12, 2008, the same day that defense counsel filed a notice of appearance, defendants moved for an extension of time "to respond to plaintiff's motion for default judgment, challenge the Court's jurisdiction, assert immunity, respond to the complaint, and otherwise file appropriate submissions." (Doc. #36 (proposed order).) The Court granted defendants additional time to respond to plaintiff's motion for a default judgment, but otherwise denied the motion. (Doc. #38.) But pointing to the fact that they requested an extension of time to "respond to the complaint," defendants argue that the Court erred when it stated that "the Individual Defendants have not answered the complaint and have given no indication that they ever plan to defend this action." Mem. & Order at 30.

"The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95 (2d Cir. 1993). The three key factors to assess in deciding whether to relieve a party from a default or default judgment are (1) whether the default was willful; (2) whether a meritorious defense is presented; and (3) whether setting aside the default would prejudice the adversary. <u>Id.</u> at 96. Defendants' August 12, 2008 motion can be generously construed to mean that defendants desired to answer the complaint at that time. This fact, which the Court admittedly overlooked initially, is a factor weighing against granting a default judgment. However, after reevaluating

12

all of the circumstances surrounding defendants' default, the Court is convinced that a default judgment was granted properly because the undisputed evidence makes clear that defendants' default was willful, that defendants have presented no meritorious defense, and that plaintiff would suffer considerable prejudice if the default were set aside.

First, the default was willful. "[W]ilfulness in the context of a judgment by default requires something more than mere negligence, such as egregious or deliberate conduct, although the degree of negligence in precipitating a default is a relevant factor to be considered." New York v. Green, 420 F.3d 99, 108 (2d Cir. 2005) (quotation omitted); see also Brien v. Kullman Indus., 71 F.3d 1073, 1078 (2d Cir. 1995) ("courts should not set aside a default when it is found to be willful"). Thus, "a strategic decision to default," Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 60 (2d Cir. 1996), as well as a "deliberate[] . . . [decision] not to appear in the action," Action S.A. v. Marc Rich & Co., 951 F.2d 504, 507 (2d Cir. 1991), constitute willful defaults. But a default caused by "careless or negligent errors," Am. Alliance Ins. Co., 92 F.3d at 61, or "a mistake made in good faith," Enron Oil Corp., 10 F.3d at 96, would not be willful. The Second Circuit has made clear that "a finding of bad faith is [not] a necessary predicate to concluding that a defendant acted 'willfully' . . . . [W]hile a determination that the defendant acted in bad faith would certainly support a finding of 'willfulness,' it is sufficient that the defendant defaulted deliberately." Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 635 (2d Cir. 1998) (emphasis added) (citation omitted).

There is no question that the Individual Defendants defaulted deliberately. As discussed in the Mem. & Order, the Individual Defendants had notice of plaintiff's grievance at least by 2002, when she filed her first action against them. Mem. & Order at 30. In dismissing that action on diplomatic immunity grounds, the court warned defendants that the dismissal was

13

"without prejudice because plaintiff could plausibly institute a new action against defendants now that they are no longer associated with the Kuwaiti Mission." Summary Order, Vishranthamma v. Al-Awadi, 02 Civ. 3710(PKL)(MHD) (S.D.N.Y. Jan. 26, 2005). Thus, the Individual Defendants were placed on notice that their diplomatic immunity defense might be unsuccessful in a subsequent action. The Individual Defendants do not dispute that they were served properly in this action on September 21, 2007. (Doc. #20.) Nonetheless, a notice of appearance was not filed until August 12, 2008, ten months after an answer to the complaint was due and after plaintiff already had moved for a default judgment. (Doc. #35.) These undisputed facts do not indicate that the Individual Defendants acted in bad faith or with disrespect for the Court in defaulting. But they do show that the Individual Defendants acted deliberately, rather than negligently, carelessly, or mistakenly. Thus, the default was "willful" as that term is used in the default judgment context.

Second, defendants have not presented a meritorious defense. In their motion for reconsideration, defendants argue only that "the Kuwaiti Diplomats' [diplomatic] immunity defense has sufficient merit to warrant withdrawal of the default judgment." (Def. Mem. in Supp. at 8.) But as discussed above, the Court has rejected that defense and defendants have not shown a basis for reconsideration of that decision. With respect to plaintiff's ATCA claims, the Individual Defendants have offered no other defense whatsoever. With respect to plaintiff's labor law claims, defendants offered a statute of limitations defense, but the Court rejected it based on the doctrine of equitable estoppel, and defendants have not argued for reconsideration of that determination. See Mem. & Order at 31-32. Thus, this factor weighs in favor of granting a default judgment.

And third, even as of the date on which defendants moved for an extension of time to "respond to the complaint," it would have unfairly prejudiced plaintiff to set aside the default. Her first action against defendants, filed in 2002, was not dismissed until 2005. She then filed this action in June 2006, but was unable to serve the Individual Defendants until September 2007. <u>See</u> Mem. & Order at 32. Defendants were fully able to litigate the issue of diplomatic immunity within the context of plaintiff's motion for a default judgment. Given the Individual Defendants' decision to default and rest on their diplomat immunity defense, and given this Court's rejection of that defense and defendants' failure to present any other meritorious defense, it would be harsh and unfair to require plaintiff to endure further delays in obtaining relief.

Thus, although defendants' professed desire to respond to the complaint weighs against granting a default judgment, the willfulness of their default, their failure to present a meritorious defense, and the prejudice that would befall plaintiff if the default were set aside all weigh in favor of granting a default judgment. On balance, the Court holds that the Individual Defendants have not established a basis for reconsideration of the order granting plaintiff's motion for a default judgment against them.

## CONCLUSION

For the foregoing reasons, plaintiff's and the Individual Defendants' motions for reconsideration and to alter or amend the judgment are denied. The inquest to determine damages remains scheduled for 10:00 a.m. on June 25, 2009 in Courtroom 12C.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
May 29, 2009