UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

Vishranthamma Swarna,                        :

        Plaintiff,                         :       Index No.  06-CV-4880 (PKC)

    -vs-                                     :

Badar Al-Awadi and Halal Muhammad Al-        :
Shaitan,

        Defendants.                        :

------------------------------------- X


## PLAINTIFF VISHRANTHAMMA SWARNA'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036-6797
Tel:  (212) 698-3500
Fax:  (212) 698-3599

*Attorneys for Plaintiff*
*Vishranthamma Swarna*

## TABLE OF CONTENTS

I. INTRODUCTION.................................................................................................... 1

II. BACKGROUND FACTS ...................................................................................... 2

III. LEGAL ARGUMENTS....................................................................................... 5

   A. This Court May Properly Exercise Subject Matter Jurisdiction Over Plaintiff's Claims For Trafficking, Forced Labor, And Slavery................................................................. 5

      1. ATS Jurisdiction Extends To Claims Alleging Violations Of Customary International Law By Individuals.................................................................................................. 5

      2. ATS Jurisdiction Is Appropriate Even Over Torts Committed In The United States. ..... 13

      3. The TVPRA neither preempts the ATS nor deprives this Court of subject matter jurisdiction........................................................................................................... 14

   B. Plaintiff Has Adequately Stated Claims For Trafficking, Forced Labor, And Slavery. ...... 18

      1. Slavery and Forced Labor ......................................................................... 18

      2. Trafficking............................................................................................... 21

   C. This Court Should Exercise Jurisdiction Over Plaintiff's State-Law Claims As Well........ 23

      1. Plaintiff's State Law Claims Are Not Time-Barred ....................................... 23

      2. This Court Should Exercise Jurisdiction Over Plaintiff's State Law Claims.................. 23

IV. CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*Abdullahi v. Pfizer, Inc.*,
 562 F.3d 163 (2d Cir. 2009) ............................................................................*passim*

*Adhikari v. Daoud & Partners*,
 697 F. Supp.2d 674 (S.D. Tex. 2009) ...........................................................12, 15

*Arbaugh v. Y&H Corp.*,
 546 U.S. 500 (2006) .......................................................................................... 24

*Baoanan v. Baja*,
 627 F. Supp. 2d 155 (S.D.N.Y. 2009) ................................................11, 14, 15

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*,
 629 F.2d 786 (2d Cir. 1980) ............................................................................ 17

*Dellefave v. Access Temps., Inc.*,
 37 Fed. Appx. 23 (2d Cir. 2002) ...................................................................... 25

*Doe I v. Unocal Corp.*,
 395 F.3d 932 (9th Cir. 2002), *decision vacated by stipulation of the parties*, 403 F.3d
 708 ..................................................................................................8, 9, 10, 11

*Doe v. Constant*,
 354 Fed. App'x 543 (2d Cir. 2009) .........................................................8, 12, 15

*Doe v. Nestlé, S.A.*,
 2010 WL 3969615 (C.D. Cal. 2010) ................................................................. 8

*Doe v. Reddy*,
 2003 WL 23892010 (N.D. Cal. Aug. 4, 2003) ..........................................14, 20

*Donelli v. County of Sullivan*,
 07 Civ. 2157, 2009 WL 2365551 (S.D.N.Y. July 31, 2009) .............................. 17

*DOT v. Public Citizen*,
 541 U.S. 752 (2004) .......................................................................................... 16

*Enercomp, Inc. v. McCorhill Pub., Inc.*,
 873 F.2d 536 (2d Cir. 1989) ............................................................................ 25

*Filartiga v. Pena-Irala*,
 630 F.2d 876 (2d Cir. 1980) ............................................................................ 10

*Flores v. S. Peru Copper Corp.*,
   414 F.3d 233 (2d Cir. 2003)........................................................................... 9, 10

*Goldstein v. Pataki*,
   516 F.3d 50 (2d Cir. 2008),................................................................................. 18

*Harary v. Blumenthal*,
   555 F.2d 1113 (2d Cir. 1977)............................................................................... 17

*In re World War II Era Japanese Forced Labor Litig.*,
   164 F. Supp. 2d 1160 (N.D. Cal. 2001) ............................................................... 10

*Jennifer Matthew Nursing & Rehab. Ctr. v. United States H.H.S.*,
   607 F.3d 951 (2d Cir. 2010)................................................................................. 15

*John Roe I v. Bridgestone Corp.*,
   492 F. Supp. 2d 988 (S.D. Ind. 2007)..............................................................10, 20

*Kadic v. Karadzic*,
   70 F.3d 232 (2d Cir. 1995)................................................................. 1, 9, 10, 15

*Khulumani v. Barclay Nat'l Bank, Ltd.*,
   504 F.3d 254 (2d Cir. 2007)...........................................................................11, 15

*Kiobel v. Royal Dutch Pet. Co.*,
   621 F.3d 111 (2d Cir. 2010)................................................................................. 10

*Nowak v. Ironworkers Local 6 Pension Fund*,
   81 F.3d 1182 (2d Cir. 1996)................................................................................. 17

*Osborn v. Haley*,
   549 U.S. 225 (2007)............................................................................................. 25

*Overall v. Estate of Klotz*,
   52 F.3d 398 (2d Cir. 1995)................................................................................... 23

*Posadas v. National City Bank*,
   296 U.S. 497 (1936)............................................................................................. 16

*Prosecutor v. Kunarac*,
   Case No. IT-96-23, Trial Chamber Judgment, ¶¶ 515, *et seq.* (Feb. 22, 2001) ...............11, 19

*Prosecutor v. Kunarac*,
   Case No. IT-96-23, Appeals Chamber Judgment ICTY, ¶ 117 (June 12, 2002) ...............8, 19

*Radzanower v. Touche Ross & Co.*,
   426 U.S. 148 (1976)............................................................................................. 16

*Rodriguez v. United States*,
    480 U.S. 522 (1987)................................................................................ 16

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004).......................................................................*passim*

*Swarna v. Al-Awadi*,
    No. 02-cv-3710 (S.D.N.Y.) .................................................................. 5

*Tel-Oren v. Libyan Arab Republic*,
    726 F.2d 774 (D.C. Cir. 1984) ......................................................10, 11

*The Paquete Habana*,
    175 U.S. 677 (1900).............................................................................. 10

*Topo v. Dhir*,
    01 Civ. 10881, 2003 U.S. Dist. LEXIS 21937 (S.D.N.Y. Dec. 3, 2003), *adopted by*
    *Topo v. Dhir*, 01 Civ. 10881, 2004 U.S. Dist. LEXIS 4134 (S.D.N.Y. Mar. 15, 2004)....12, 16

*United States v. Bradley*,
    390 F.3d 145 (1st Cir. 2004) ............................................................... 20

*United States v. Sung Bum Chang*,
    237 Fed.Appx. 985 (5th Cir. 2007) ..................................................... 20

*Velez v. Sanchez*,
    __ F. Supp.2d __, 2010 WL 4852321 (E.D.N.Y. Nov. 30, 2010)................................*passim*

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*,
    517 F.3d 104 (2d Cir. 2008)............................................................ 6, 10

*Zoe G. v. Frederick F.G.*,
    208 A.D.2d 675 (2d Dep't 1994)......................................................... 23

*Zumpano v. Quinn*,
    6 N.Y.3d 666 (2006).............................................................................. 23

## STATUTES

28 U.S.C. § 1350  (Alien Tort Claims Act or "ATS") ........................................*passim*

28 U.S.C. § 1367 ........................................................................................ 23

Trafficking Victims Protection Reauthorization Act ("TVPRA")........................................*passim*

Fed. R. Civ. Proc. 12 ................................................................................... 1

Fed. R. Civ. Proc. 15 ................................................................................... 18

OTHER AUTHORITIES

International Covenant on Civil and Political Rights ("ICCPR") art. 4 .......................................... 7

ICCPR art. 6 ............................................................................................................................... 10

ICCPR art. 7 ............................................................................................................................... 10

ICCPR art. 8 ............................................................................................................................ 7, 9

Vienna Convention on the Law of Treaties art. 53 (May 23, 1969), 8 I.L.M. 679, 1155
    U.N.T.S. 332 ........................................................................................................................ 8

Trafficking Victims Protection Reauthorization Act, Statement By President George W.
    Bush Upon Signing H.R. 972, Jan. 10, 2006, *as reprinted in* 2006 U.S.C.C.A.N. S56,
    2006 WL 870644 ................................................................................................................ 17

Statement on Signing the Trafficking Victims Protection Reauthorization Act of 2005,
    Jan. 10, 2006 ...................................................................................................................... 16

Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and
    Children, Supplementing the United Nations Convention Against Organized Crime,
    40 I.L.M. 377 (Nov. 15, 2000). ............................................................................................ 8

*Report of the Int'l Law Comm'n to the General Assembly*, U.N. Doc. A/5509 (1963),
    *reprinted in* [1963] 2 Y.B. Int'l L. Comm'n 187, 211; 1957 Abolition of Forced
    Labour Convention (ILO No. 105), June 25, 1957, 320 U.N.T.S. 291 ............................... 7

Restatement (Third) of Foreign Relations Law, § 702 ......................................................... 7, 13

David Weissbrodt and Anti-Slavery Int'l, *Abolishing Slavery and its Contemporary
    Forms*, Report Prepared for U.N. Working Group on Contemporary Forms of
    Slavery, HR/PUB/02/4, ¶ 62 at 18 (2002) ........................................................................ 8

Gay J. McDougall, *Contemporary Forms of Slavery: Systematic Rape, Sexual Slavery
    and Slavery-Like Practices During Armed Conflict*, ¶¶ 27-30, U.N. Doc.
    E/CN.4/Sub.2/1998/13 (June 22, 1998) ............................................................................ 8

Int'l Labour Org., *Forced Labour in Myanmar (Burma): Report of the Commission of
    Inquiry*, Part IV.9.A (1998), at ¶¶ 203-04 ..................................................................... 11

Plaintiff Vishranthamma Swarna ("Plaintiff") hereby opposes the Motion to Dismiss brought by Defendants Badar Al-Awadi ("Al-Awadi") and Halal Muhammad Al-Shaitan ("Al-Shaitan") (collectively, "Defendants") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  As set forth below, the stated grounds for dismissal are meritless, and the Court can and should exercise jurisdiction to adjudicate Plaintiffs' federal and state-law claims.

## I.    <u>INTRODUCTION</u>

Once again, Defendants are before this Court seeking to avoid liability in this case on the basis that well-settled conventions of international law simply do not apply to them.  Defendants' latest effort seeks to call into question this Court's subject matter jurisdiction and Ms. Swarna's ability to state a claim under the Alien Tort Claims Act, 28 U.S.C. § 1350 (sometimes referred to as the "Alien Tort Statute" or "ATS").  But as explained below, Defendants' arguments hinge on a fatal misreading, mis-citation, or misapprehension of well-settled norms of domestic and international law and must be rejected for several key reasons.

First, Defendants's threshold argument – that the well-defined international prohibition of slavery "in all its forms" does not govern or prohibit slavery by *individuals* – is both legally incorrect and logically incoherent.  The governments of all civilized nations long have recognized an absolute prohibition of slavery by all actors, in any form.  Hence, the Second Circuit consistently has recognized that claims involving slavery and slavery-like practices give rise to jurisdiction under the ATS where those claims are asserted against individuals.  *See, e.g.*, *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 172-73 (2d Cir. 2009); *Kadic v. Karadz I*, 70 F.3d 232, 239-40 (2d Cir. 1995).  Defendants simply ignore or misapprehend the substantial body of law demonstrating that individual liability for slavery is the very essence of the international norm prohibiting it.  Their first basis for dismissal must be rejected.

Second, Defendants incorrectly argue that this Court's grant of jurisdiction over slavery and trafficking claims under the ATS has been preempted by the Trafficking Victims Protection Reauthorization Act of 2002 ("TVPRA").  Defendants base this argument on a single District Court decision that *upheld* its subject matter jurisdiction over a plaintiff alleging forced labor claims.  *See Velez v. Sanchez*, 2010 WL 4852321 (E.D.N.Y. Nov. 30, 2010).  In any event, that single decision ignores critical principles of federal law that militate against a finding that the TVPRA somehow preempts or supplants ATS jurisdiction here.

Third, Defendants wrongly contend that Ms. Swarna has failed to sufficiently allege her claims for slavery, forced labor, and trafficking under customary international law.  Ms. Swarna's claims fit squarely within the customary definitions of slavery, forced labor, and trafficking used by civilized nations – definitions and uses which Defendants simply ignore.

Finally, Defendants urge this Court to dismiss Ms. Swarna's state-law claims on the basis that it either lacks supplemental jurisdiction over those claims or because those claims are time-barred.  Because Defendants' attacks on Ms. Swarna's federal claims fail, any argument that the Court lacks supplemental jurisdiction fail as well.  And Defendants' statute-of-limitations arguments are wholly without merit, as this Court has previously recognized.

For all these reasons, and more still, Defendants' Motion to Dismiss should be denied.

## II.   **BACKGROUND FACTS**

This Court is by now well aware of the facts and circumstances surrounding Ms. Swarna's work for and treatment by Defendants, many of which it cited in granting Ms. Swarna's motion for default judgment.[1]  However, several salient facts bear repeating, as they demonstrate why Defendants' effort to obscure and contort the core facts here must be rejected.

---

[1] *See* Order and Memorandum and Order dated Mar. 19, 2009 at 2-5 ("Default Judgment Order").

Ms. Swarna's Complaint alleges that Defendants "traffick[ed] Ms. Swarna into the United States under false pretenses" for the purpose of "subjecting her to slavery-like conditions through physical, sexual, and psychological abuse."  Complaint dated June 23, 2006 ("Compl."), ¶¶ 2, 114.  Among the "promises" made by Defendants to induce Ms. Swarna to travel with them to the United States were promises to:  (1) pay her "wages of $2000 per month"; (2) provide her with "an annual paid vacation to India to visit her family"; (3) "give her Sundays off each week" so that she could attend church; and (4) "treat[]" her "well."  *Id.*, ¶ 17.  In reliance upon these representations, Ms. Swarna accepted Defendants' offer of employment.  *Id.*, ¶ 18.

Plaintiff was never given the promised contract.  *Id.*, ¶¶ 28-29.  Upon her arrival in the United States on or about September 8, 1996, Defendants immediately confiscated her identity and travel documents, including her passport.  *Id.*, ¶¶ 23, 27.  Moreover, Defendants immediately reneged on all the promises made to her.  Compl., ¶¶ 28, 35-36, 38; *see also* Declaration of Vishranthamma Swarna dated Aug. 5, 2008 ("Swarna Decl."), ¶¶ 15, 21, 27, 29.  They never paid her the $2,000 per month promised.  Compl., ¶¶ 28, 30.  Nor did they ever pay her any money directly.  *Id.*, ¶ 32.  Indeed, Ms. Swarna never had any money of her own and "was completely dependent on Al-Awadi and Al-Shaitan" for all of her needs.  Swarna Decl., ¶ 15.  When Ms. Swarna asked why Defendants were not paying her the $2,000 per month promised, Defendant Al-Shaitan stated that "they had only promised that amount so as to entice Ms. Swarna to come to the United States."  Compl., ¶ 29.

Nor did Defendants honor their other promises to Plaintiff.  She did not get an annual paid trip to India.  Compl., ¶ 35.  Although she was permitted to travel twice to India when her husband was gravely ill, "Defendants Al-Awadi and Al-Shaitan threatened the safety of Ms. Swarna, her husband, and her children if she failed to return to Individual Defendants' home in

New York." *Id.*, ¶¶ 35, 69.  Indeed, Defendants said, "No matter where you go in India, we will

hunt you." *Id.*, ¶ 69.  Ms. Swarna believed that she and her family would be in danger if she did

not return as Defendants demanded. *Id.*, ¶ 70.  Moreover, Ms. Swarna was not permitted to have

Sundays free as promised. *Id.*, ¶ 36.

Not only did Defendants intentionally renege on their promises to Ms. Swarna, they

treated her in an abhorrent manner. *Id.*, ¶¶ 36, 39-40. She was forced to work under "harsh

working conditions," 17 hours a day, seven days a week. *Id.*, ¶¶ 39-40.  She was subjected to

"constant and unrelenting verbal and physical abuse" and threats of physical harm.  Swarna

Decl., ¶¶ 29.  Indeed, Defendants repeatedly "assaulted, abused, demeaned, and humiliated" Ms.

Swarna, and Defendant Al-Awadi repeatedly raped her.  Compl, ¶¶ 72, 80-83.

Defendants completely "isolated Ms. Swarna from the outside world," letting her leave

the apartment on only 10-15 occasions over the years and locking her inside when they left,

sometimes for days at a time.  Compl., ¶¶ 25, 54-60; Swarna Decl., ¶ 24-25.  When anyone

visited, Defendants also locked her inside the children's bedroom so she could not be seen.

Swarna Decl., ¶ 25.  Ms. Swarna was not permitted to use the phone, her mail was monitored and

confiscated, and she was not permitted to learn English.  Compl., ¶¶ 63-68; Swarna Decl., ¶¶ 26-

28.  She believed she could not leave Defendants' home without her passport, and she had "no

place to go" and "no idea how to seek help in New York."  Swarna Decl, ¶ 29.

Defendants "forced" Ms. Swarna to continue working "by verbal and physical abuse and

threats" to her and her family.  Swarna Decl., ¶ 42.  She lived under "constant threat of rape,"

death, and harm to her family back in India. *See*, *e.g.*, Compl., ¶¶ 69-70, 74, 76; Swarna Decl.,

¶¶ 29, 36, 39, 42.  Ms. Swarna "believed" these threats.  Swarna Decl., ¶ 22.  And although she

"made frequent requests to be sent home to India," these requests "were refused and were

accompanied by threats that if Ms. Swarna attempted to leave she and her family would be

injured." Compl., ¶ 76; Swarna Decl., ¶ 22. On the one occasion that Ms. Swarna attempted to

leave, Defendant Al-Awadi injured her by hitting her with a suitcase, then both Defendants hit

her in the face, and finally Al-Awadi held up an iron and threatened to hit Ms. Swarna in the

head with it. Compl., ¶¶ 85-88; Swarna Decl., ¶¶ 37-38; Transcript in *Swarna v. Al-Awadi*, No.

02-cv-3710 (Apr. 26, 2004) ("Swarna Tr.") at 28-29. Defendant Al-Awadi then told Ms. Swarna

if she did not continue working for them, they would kill her. Swarna Decl., ¶ 39; Compl., ¶ 88.

When Ms. Swarna finally decided to try and escape Defendants' home, she only did so because

she believed they would hurt or kill her if she was forced to accompany them on their upcoming

trip to Kuwait. Compl., ¶ 89; Swarna Decl., ¶ 39.

## III.   LEGAL ARGUMENTS

### A.   This Court May Properly Exercise Subject Matter Jurisdiction Over Plaintiff's Claims For Trafficking, Forced Labor, And Slavery.

Defendants make three arguments in an effort to avoid this Court's subject matter

jurisdiction under the ATS. First, Defendants argue that the Court lacks jurisdiction because

prohibition of slavery and forced labor by individuals is not "a specific, universal, and obligatory

norm of international law" giving rise to jurisdiction under the ATS. Motion To Dismiss

("MTD") at 1. Second, Defendants contend that the ATS does not extend jurisdiction to claims

involving torts occuring on U.S. soil. Finally, Defendants insist that the ATS has been displaced

or preempted by the TVPRA, warranting dismissal of Plaintiff's ATS-based claims. *Id.* at 2. As

detailed below, each of these arguments is without merit and must be rejected.

### 1.   ATS Jurisdiction Extends To Claims Alleging Violations Of Customary International Law By Individuals.

The Alien Tort Statute provides: "The district courts shall have original jurisdiction of

any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty

of the United States." 28 U.S.C. § 1350.  In *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724-25

(2004), the Supreme Court held that federal courts have jurisdiction under the ATS to hear tort

claims based on violations of norms of customary international law.  Since *Sosa*, courts have

held that a customary international norm is one that is "sufficiently (i) universal and obligatory,

(ii) specific and definable, and (iii) of mutual concern, to permit courts to infer a cause of action

under the ATS."  *Abdullahi*, 562 F.3d at 177; *Vietnam Ass'n for Victims of Agent Orange v. Dow

Chem. Co.*, 517 F.3d 104, 117 (2d Cir. 2008).  Defendants here argue that this Court lacks

subject matter jurisdiction under the ATS because there is no "support in acceptable sources of

international law for a norm imposing liability on an *individual* for enslaving another

*individual*."  MTD at 1.  But as the great weight of authority demonstrates, the torts perpetrated

by Defendants here are precisely the types of violations of "the law of nations" that give rise to

ATS jurisdiction in this case.[2]

> ### a.   *Sosa* Does Not Support Dismissal Of Plaintiff's Claims.

As a threshold matter, Defendants' reliance on *Sosa* for the proposition that this Court

lacks subject matter jurisdiction is misplaced.  Although *Sosa* construes the ATS to confer

federal jurisdiction over a "very limited category of claims," it expressly holds that "the door is

still ajar" to recognizing violations of "international norms."  *Id.* at 729.  The cautionary

concerns articulated in *Sosa* regarding expansive recognition of tenuous international norms

simply are not applicable here where the norms in question are so firmly established in the law.

Thus, in *Sosa*, the Court found that the plaintiff's claim seeking redress for "brief" arbitrary

detention followed by prompt due process had not "attained the status of binding customary

---

[2] Ms. Swarna alleges that Defendants violated norms prohibiting "slavery and slavery-like practices, including forced labor, involuntary servitude, and sexual slavery in violation of the law of nations" (Compl., ¶ 113), and trafficking (*id.*, ¶ 114).  Defendants do not challenge her claims of involuntary servitude or sexual slavery under the ATS.

international law," particularly in view of other international instruments suggesting that only

"*prolonged* arbitrary detention" would give rise to a violation of an international legal norm. *Id.*

at 734-37 (emphasis added).[3]   In contrast, Ms. Swarna's claims fall squarely within the contours

of well-established norms.   Similarly, although *Sosa*'s footnote 20 suggests that Courts should

consider "whether international law extends the scope of liability . . . to the perpetrator being

sued," 542 U.S. at 732 n.20, here there is no question that the norms of international law at issue

extend liability to individuals.   Thus, nothing in *Sosa*'s holding prohibits jurisdiction here.

> **b.      Slavery "In All Its Forms" Is A Violation Of Customary International Law Actionable Under The ATS.**

The international prohibitions against slavery and slavery-like practices, including forced

labor, are among the most well-established principles of international law.   *See* Restatement

(Third) of Foreign Relations Law, § 702 cmt. a (describing prohibitions against slavery as among

norms "whose status as customary law is generally accepted . . . and whose scope and content are

generally agreed").   As Defendants acknowledge, the requirement that slavery be eradicated in

"all its forms" is enshrined in numerous widely adopted treaties.   *See* MTD at 10-12.   Indeed,

multiple sources of law recognize that prohibitions on slavery and forced labor have reached the

status of "*jus cogens*" norms.   *See*, *e.g.*, *Report of the Int'l Law Comm'n to the General*

*Assembly*, U.N. Doc. A/5509 (1963), *reprinted in* [1963] 2 Y.B. Int'l L. Comm'n 187, 211; 1957

Abolition of Forced Labour Convention (ILO No. 105), June 25, 1957, 320 U.N.T.S. 291;

ICCPR arts. 4 and 8(3)(a) ("no one shall be required to perform forced or compulsory labour");

---

[3] Defendants also fasten on language in *Sosa* rejecting the plaintiff's reliance on the Universal Declaration of Human Rights and the International Covenant on Civil and Political Rights ("ICCPR") as a sufficient basis to establish that brief, arbitrary detention was a violation of customary international law.  *See* MTD at 12.  But the actual language of the Court's opinion says merely that these documents "cannot . . . *themselves*" establish applicable customary international law. *Sosa*, 542 U.S. at 735.  Here, Ms. Swarna relies not just on these international conventions but also on a well-established body of international law recognizing that slavery and slavery-like practices are violations of the law of nations.  *See* sections III.A.1.b-c, *infra*.

*see also Prosecutor v. Kunarac*, Case No. IT-96-23, Appeals Chamber Judgment ICTY, ¶ 117 (June 12, 2002); *Doe v. Nestlé, S.A.*, 2010 WL 3969615, at *10 (C.D. Cal. 2010) ("It is widely acknowledged that the use of forced labor violates international law."); *Doe I v. Unocal Corp.*, 395 F.3d 932, 945 (9th Cir. 2002), *decision vacated by stipulation of the parties*, 403 F.3d 708 ("forced labor is so widely condemned that it has achieved the status as a *jus cogens* violation").[4] Moreover, prohibitions on slavery-like practices, such as involuntary servitude, trafficking, and sexual slavery, are prohibited under customary international law as "contemporary forms of slavery." *See*, *e.g.*, David Weissbrodt and Anti-Slavery Int'l, *Abolishing Slavery and its Contemporary Forms*, Report Prepared for U.N. Working Group on Contemporary Forms of Slavery, HR/PUB/02/4, ¶ 62 at 18 (2002) ("Weissbrodt, *Slavery*") ("The trafficking of persons today can be viewed as the modern equivalent of the slave trade of the nineteenth century."); Gay J. McDougall, *Contemporary Forms of Slavery: Systematic Rape, Sexual Slavery and Slavery-Like Practices During Armed Conflict*, ¶¶ 27-30, U.N. Doc. E/CN.4/Sub.2/1998/13 (June 22, 1998) ("In all respects and in all circumstances, sexual slavery is slavery is slavery and its prohibition is a *jus cogens* norm."); *see also* Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children, Supplementing the United Nations Convention Against Organized Crime, 40 I.L.M. 377 (Nov. 15, 2000) ("Trafficking Protocol").

This substantial body of international law demonstrates that prohibitions on slavery, forced labor, involuntary servitude, sexual slavery, and trafficking are precisely the sort of norms with "definite content and acceptance among civilized nations" sufficient to support ATS jurisdiction. *Sosa*, 542 U.S. at 732.

---

[4] The Vienna Convention on the Law of Treaties defines a "*jus cogens*" norm as a peremptory international norm "accepted and recognized by the international community of states as a whole as a norm from which no derogation is permitted." Vienna Convention on the Law of Treaties art. 53 (May 23, 1969), 8 I.L.M. 679, 1155 U.N.T.S. 332.

c.      **The ATS Permits Jurisdiction Over Claims Against Individuals For Slavery And Slavery-Like Practices.**

Despite this body of international law prohibiting slavery in "all its forms," Defendants contend that an *individual*'s practice of slavery does not offend customary international law. MTD at 9-10.  Again, the substantial weight of authority demonstrates precisely the opposite: slavery, like piracy, is an activity defined under customary international law to apply to individuals as well as states.  *See*, *e.g.*, *Abdullahi*, 562 F.3d at 177 ("ATS claims may sometimes be brought against private actors, and not only state officials, when the tortious activities violate norms of 'universal concern' that are recognized to extend to the conduct of private parties – for example, slavery, genocide, and war crimes."); *Kadic*, 70 F.3d at 239 (noting that slave traders, like pirates, are enemies of all mankind and that non-state actors may be held liable for violation of norm); *see also Dow Chemical,* 517 F.3d at 117.

Defendants misconstrue the significance of the language in the various anti-slavery conventions prohibiting slavery and requiring states to make slavery and slavery-like practices subject to criminal sanction.  While the treaties impose an obligation on states to make slavery illegal, it is plain that the illegal *acts* amounting to slavery are engaged in by individuals.  The treaties are therefore evidence that the norms apply to individuals.  *See Abdullahi*, 562 F.2d at 176 (courts should consider widely accepted treaties as evidence of custom) (citing *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 247-48 (2d Cir. 2003).  Indeed, the Court in *Abdullahi* held that language in ICCPR Article 8 broadly prohibiting non-consensual medical experimentation on individuals evidenced the existence of a norm of customary international law for which individual perpetrators could be liable.  *See id.* at 180 ("By its terms this prohibition is not limited to state actors:  rather it guarantees individuals the right to be free from nonconsensual medical experimentation by any entity – state actors, private actors, or state and private actors

behaving in concert.").  The language found to support a norm prohibiting acts by individuals in

*Abdullahi* is substantially similar to the language of the ICCPR relied on by Ms. Swarna here.

*Compare* ICCPR art. 7 ("no one shall be subjected without free consent to medical or scientific

experimentation"), *with* art. 6 ("No one shall be held in slavery . . . . No one shall be held in

servitude.").  These authorities undermine Defendants' claim that an international convention or

law must provide for individual liability (*see* MTD at 10), which is plainly not required.

Moreover, under *Sosa* U.S. common law provides the cause of action – not international law –

and therefore there is no basis for Defendants' suggestion that the norm at issue must provide for

individual civil liability.  *See Sosa*, 542 U.S. at 724.[5]  As set forth above, the content of treaties

cited by Plaintiff in her Complaint and the usages and practices of nations clearly prohibit

slavery in all its forms, including by individuals.

Indeed, consistent with customary international law, a substantial body of U.S.

jurisprudence – including jurisprudence in this Circuit – now recognizes that slavery and forced

labor violate customary international law when committed by non-state actors.  *See Abdullahi*,

562 F.3d at 172-73; *John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 991, 1022 (S.D. Ind.

2007); *Doe I*, 395 F.3d at 945; *In re World War II Era Japanese Forced Labor Litig.*, 164 F.

Supp. 2d 1160, 1179 (N.D. Cal. 2001); *Kadic*, 70 F.3d at 239-40; *see also Tel-Oren v. Libyan

Arab Republic*, 726 F.2d 774, 794-95 (D.C. Cir. 1984) (Edwards, J., concurring) ("forced labor is

---

[5] Defendants also cite *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010), for the dual
propositions that the ATS does not confer subject matter jurisdiction over claims against corporations and
that rules of domestic law cannot create norms of customary international law.  *See* MTD at 9, 14-15.  But
the controversial *Kiobel* ruling does not diminish the long-standing rule of this Circuit that individuals
may be sued under the ATS for violations of customary international law.  *See Filartiga v. Pena-Irala*,
630 F.2d 876, 888 (2d Cir. 1980); *Kadic*, 70 F.3d at 239-40; *see also Kiobel*, 621 F.3d at 118-19 (Leval,
J., concurring) (noting the split in the court on the issue of corporate liability under the ATS).  Moreover,
while domestic laws may not *create* a rule of international law, the collective practices and laws of
civilized nations can most certainly inform and illustrate an otherwise existing norm of international law.
*Dow Chem.*, 517 F.3d at 116; *Flores*, 414 F.3d at 248; *The Paquete Habana*, 175 U.S. 677, 700 (1900).

a modern variant of slavery" and is accordingly "among the 'handful of crimes . . . to which the law of nations attributes *individual* liability.'" (emphasis added)).[6]   International judicial bodies have also recognized the individual liability for slavery.   For example, the International Criminal Tribunal for the Former Yugoslavia ("ITCY") has held – based on an extensive analysis of the history and sources of law prohibing slavery – that enslavement *by individuals* violates norms of customary international law.   *See Prosecutor v. Kunarac*, Case No. IT-96-23, Trial Chamber Judgment, ¶¶ 515, *et seq.* (Feb. 22, 2001).   Moreover, as the Ninth Circuit has observed, "case law strongly supports the conclusion that forced labor is a modern variant of slavery" and is accordingly "among the 'handful of crimes . . . to which the law of nations attributes *individual* liability.'"   *Doe I*, 395 F.3d at 945 (quoting *Tel-Oren*, 726 F.2d at 794-95 (Edwards, J., concurring)).[7]   Indeed, the International Labour Organization has now concluded that "there exists now in international law a peremptory norm prohibiting any recourse to forced labor" and "any *person* who violates this peremptory norm is guilty of a crime under international law."   Int'l Labour Org., *Forced Labour in Myanmar (Burma): Report of the Commission of Inquiry*, Part IV.9.A (1998), at ¶¶ 203-04 (emphasis added).

Finally, while the foregoing is dispositive, multiple federal courts have assumed, without deciding, that they have subject matter over claims against private actors under the ATS.   Most notably, in *Baoanan v. Baja* – a case factually very similar to the present case – the United States District Court for the Southern District of New York held that it had ATS subject matter jurisdiction over claims alleging slavery and forced labor against a former diplomat and his wife

---

[6] Defendants' attempt to minimize Judge Edward's opinion in *Tel-Oren* must be rejected; state criminalization of slave trading *supports* rather than undermines individual liability for slavery.

[7] Although *Doe I* was a case involving claims against a private corporation rather than an individual, Second Circuit Judge Katzmann has noted that decisions of the Second Circuit "have repeatedly treated the issue of whether corporations may be held liable under the ATCA as indistinguishable from the question of whether private individuals may be."   *Khulumani v. Barclay Nat'l Bank, Ltd.*, 504 F.3d 254, 282 (2d Cir. 2007) (Katzmann, J., concurring).

who allegedly "conspired to lure [the plaintiff] from the Philippines with false promises" and "forced her to work as a domestic servant" in their home.  627 F. Supp. 2d 155, 157, 165, 171 (S.D.N.Y. 2009); *Doe v. Constant*, 354 Fed. App'x 543, 545-46 (2d Cir. 2009); *Adhikari v. Daoud & Partners*, 297 F. Supp. 2d 674, 687-88 (S.D. Tex. 2009); *see also Topo v. Dhir*, 2003 U.S. Dist. LEXIS 21937, at *12-14 (Dec. 3, 2003), *adopted by Topo v. Dhir*, 2004 U.S. Dist. LEXIS 4134 (S.D.N.Y. Mar. 15, 2004) (Castel, J.).

> ### d.  Defendants' Arguments Do Not Overcome The Great Weight Of Authority Supporting ATS Jurisdiction Over Plaintiff's Claims In This Case.

Defendants seek to disavow the foregoing authorities by making several arguments that have been expressly rejected by the Second Circuit.  First, relying on *Sosa*, they argue that the treaties and conventions cited by Ms. Swarna in her Complaint "do not impose obligations as a matter of international law" and are "not self-executing" so as to "create obligations in federal court."  *See* MTD at 12-13.  But these very arguments have been explicitly rejected by the Second Circuit as a basis to disavow the existence of a norm of customary international law. *Abdullahi*, 562 F.2d at 175-76.

Second, Defendants argue that none of the specific treaties or conventions cited by Plaintiff specifically prohibits enslavement of an individual by another individual.  *Id.* at 10-11. But as set forth above, the treaties themselves are but one source of the prohibition, and customary international law more generally makes clear that slavery is prohibited in "all its forms," including when perpetrated by individuals.  *See* section III.A.c, *supra*.

Third, Defendants claim that the Restatement (Third) of Foreign Relations Law ("Restatement") is "significant" in requiring "state action" for slavery to rise to the level of a violation of customary international law.  MTD at 13.  Again, Defendants are wrong.  The Restatement merely defines the scope of state liability and state obligations; it does not preclude

individual liability for slavery. Indeed, the Restatement recognizes that "[s]lavery and slave trade are forbidden by international law, both as a matter of customary law and as general principles common to major legal systems." Restatement, § 702, Reporter's Note 4.

Finally, Defendants urge the Court to refuse to exercise subject matter jurisdiction because "the practical consequence[]" of hearing Plaintiff's claims would be to open the floodgates to litigation by any alien employee who alleges employment conditions "tantamount to slavery." *Id.* at 14 (quoting *Sosa*). Putting aside the many distinctions between *Sosa* and the present case that vastly undermine this argument, federal law affirmatively permits "any alien" to sue under the ATS for the tort of slavery, and it has been widely accepted in this jurisdiction and others as a justiciable violation of customary international law.

In summary, domestic and international jurisprudence, international conventions, and the scholarly commentary of the international community overwhelmingly support the exercise of subject matter jurisdiction over Swarna's ATS claims in this case. Defendants' motion to dismiss should be denied.

### 2.   ATS Jurisdiction Is Appropriate Even Over Torts Committed In The United States.

Although Ms. Swarna's allegations are not confined to actions taken by Defendants in the United States – indeed her core trafficking allegations hinge on actions taken by Defendants *outside* of the U.S. (*see* Compl., ¶¶ 14-22) – Defendants are nonetheless incorrect that this Court lacks jurisdiction over ATS claims involving torts committed on United States soil. *See* MTD at 19. Indeed there are multiple cases in which courts have exercised jurisdiction over claims brought by aliens involving primarily U.S. conduct, including cases involving foreign domestic workers like Ms. Swarna. Most notably, in *Baoanan*, a former domestic worker sued a diplomat and his wife claiming they "lure[d]" her into the United States and thereafter "forced her to

work" form them in their U.S.-based home, where they mistreated her in a number of ways.  627 F. Supp. 2d at 157, 165, 171.  As set forth above, the *Baoanan* court found that it had subject matter jurisdiction over those claims, notwithstanding that most of the claimed offenses took place on U.S. soil.  *See also Doe v. Reddy*, 2003 WL 23892010 (N.D. Cal. Aug. 4, 2003); *Topo v. Dhir*, 2003 U.S. Dist. LEXIS 21934.  Defendants citation to *Velez*, 2010 WL 4852321, where the court mistakenly characterized the issue as one of "first impression," is unavailing.  Even the *Velez* court acknowledged that "*no* case holds that the ATS covers only torts occurring abroad," *see id.* (emphasis added), and the language of the ATS itself contains no such requirement. Rather, as *Baoanan* and other cases recognize, claims brought "by an alien" for a violation of the "law of nations" satisfy the requirements for ATS jurisdiction.  28 U.S.C. § 1350.

### 3.   The TVPRA neither preempts the ATS nor deprives this Court of subject matter jurisdiction.

Relying on a single wrongly-decided case from outside of this District, *Velez v. Sanchez*, 2010 WL 4852321 (E.D.N.Y. Nov. 30, 2010), Defendants argue that the TVPRA implicitly preempts the ATS.  Defendants' argument is flawed for at least two reasons.  First *Velez* is inconsistent with both (i) the numerous decisions in this Circuit that have permitted ATS claims to proceed even after the TVPRA was enacted and in force, and (ii) the well-settled rule that Congress' intent to repeal or amend an earlier statute must be clear and manifest on the face of the statute before a Court should find that the earlier statute has been repealed, amended, or preempted by a subsequent statute.  Second, it is irrelevant whether or not the TVPRA preempts the ATS because the facts alleged in the Complaint adequately set forth a cause of action under the TVPRA as well.  As *Velez* itself recognizes, even if ATS claims are preempted by the TVPRA, this Court can, and should, exercise subject matter jurisdiction over Plaintiff's ATS claims as if those claims had been alleged under the TVPRA.

a.      **The TVPRA Does Not Preempt The ATS.**

The *Velez* decision (out of the Eastern District of New York) stands alone as the only

decision to hold that the TVPRA preempts claims asserted under the ATS.  In contrast, several

courts in this Circuit (including a summary decision by the Second Circuit), have permitted ATS

claims to proceed even after December 19, 2003 (the date on which the TVPRA took effect) –

implicitly finding that subject matter jurisdiction existed as to those claims.  *See*, *e.g.*, *Constant*,

354 Fed. App'x. at 545-46; *Baoanan*, 627 F. Supp. 2d at 159, 170-71; *Topo v. Dhir*, 2003 U.S.

Dist. LEXIS 21937, at *12-14;[8] *see also Adhikari*, 697 F. Supp.2d at 687-88 (holding that the

TVPRA does not preempt ATS claims).

The *Velez* decision, and the Defendants' argument, actually gets the law backwards.  As

many courts, including the Supreme Court and the Second Circuit, have held, Congress'

enactment of statutes in the same subject area covered by the ATS actually supports a finding of

jurisdiction over Plaintiffs' claims by demonstrating a "clear mandate" to allow recovery under

the ATS.  *See*, *e.g.*, *Sosa*, 542 U.S. at 728, 731 (passage of Torture Victim Protection Act

supplements ATS and illustrates "clear mandate" in support of claims of torture and extrajudicial

killing under ATS); *Kadic*, 70 F.3d at 241-42 (passage of Genocide Convention Implementation

Act supports liability under ATS even though statute did not create private right of action);

*accord Khulumani v. Barclays Nat'l Bank Ltd.*, 504 F.3d 254, 283-84 (2d Cir. 2007).

Moreover, *Velez* is inconsistent with the well-settled principle that repeals by implication

are strongly disfavored.  Indeed, a Court should find that an earlier statute has been implicitly

repealed by a subsequent statute only where Congress' intent to repeal or amend the earlier

---

[8] Whether or not the parties raised the issue of ATS preemption in these cases is not meaningful because
courts have an independent obligation to examine whether subject matter jurisdiction exists in a particular
action.  *See*, *e.g.*, *Jennifer Matthew Nursing & Rehab. Ctr. v. United States H.H.S.,* 607 F.3d 951, 955 (2d
Cir. 2010) ("we have an independent obligation to consider the presence or absence of subject matter
jurisdiction *sua sponte*").

statute is clear and manifest on the face of the newer statute.  *See Rodriguez v. United States,* 480 U.S. 522, 524 (1987).  There are "two well-settled categories of repeals by implication (1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act.  But in either case, the intention of the legislature to repeal must be clear and manifest . . . ."  *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976) (quoting *Posadas v. National City Bank,* 296 U.S. 497, 503 (1936)).

Neither Defendants nor the court in *Velez* contend that there is an "irreconcilable conflict" between the ATS and the TVPRA, and, indeed, there is no "irreconcilable conflict" between the two statutes because the statutes are capable of coexistence.  *DOT v. Public Citizen,* 541 U.S. 752, 766 (2004) (no "irreconcilable conflict" between statutes where it was possible to comply with both).  In addition, there is no evidence that the TVPRA "covers the whole subject of [the ATS] and is *clearly intended* as a substitute."  *Radzanower*, 426 U.S. at 154 (emphasis added).  In *Velez*, the court held that the TVPRA preempted the ATS because the statute "occupies the field of civil remedies for human trafficking and forced labor."  2010 WL 4852321, at *7.  But *Velez* and Defendants fail to cite any evidence that Congress, in enacting the TVPRA, "*clearly intended*" to repeal or preempt the ATS.  In fact, the opposite is true.  The TVPRA was intended to strengthen, not dilute, the United States' existing anti-trafficking laws. *See*, *e.g.*, Statement on Signing the Trafficking Victims Protection Reauthorization Act of 2005, Jan. 10. 2006 ("Today, I have signed into law H.R. 972, the 'Trafficking Victims Protection Reauthorization Act of 2005.'  This Act enhances our ability to combat trafficking in persons by extending and improving prosecutorial and diplomatic tools, and also adds new protections for

victims."); Trafficking Victims Protection Reauthorization Act, Statement By President George

W. Bush Upon Signing H.R. 972, Jan. 10, 2006, *as reprinted in* 2006 U.S.C.C.A.N. S56, 2006

WL 870644 ("this bipartisan bill will help expand our efforts to combat this brutal crime that

steals innocence and destroys lives").

> **b.     TVPRA Preemption Would Not Prevent This Court From Exercising Subject Matter Jurisdiction Over Plaintiff's ATS Claims.**

Not only is Defendants' preemption argument incorrect, but it is also a red herring

because, even if the TVPRA preempted Plaintiff's ATS claims (which it does not), this Court

could still exercise subject matter jurisdiction over those ATS claims simply by treating the

claims as if they had been pleaded under the TVPRA.  It is an established principle in the Second

Circuit that failure to allege properly the statutory basis for federal subject matter jurisdiction is

not dispositive when the facts alleged in the complaint allege a claim under federal law.  *See*,

*e.g.*, *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1189 (2d Cir. 1996) ("[I]n

cases where the asserted basis for subject matter jurisdiction is also an element of the plaintiff's

allegedly federal cause of action, we ask only whether – on its face – the complaint is drawn so

as to seek recovery under federal law or the Constitution. If so, then we assume or find a

sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits.");

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 793 & n.6 (2d Cir.

1980) ("jurisdiction inhered in the district court" because, while plaintiff improperly pleaded the

jurisdictional statute, "the existence of such jurisdiction appears from the facts alleged in the

complaint"); *Harary v. Blumenthal*, 555 F.2d 1113, 1115 n.1 (2d Cir. 1977) ("When the

complaint pleads facts from which federal jurisdiction may be inferred . . . the insufficiency of

the jurisdictional allegation is not controlling, and the action need not be dismissed"); *Donelli v.

County of Sullivan*, 2009 WL 2365551, at *5 n.5 (S.D.N.Y. July 31, 2009) (although plaintiff

failed to accurately plead jurisdictional statute "or otherwise to make explicit the appropriate basis for jurisdiction, that failure does not affect the analysis because it [was] clear that the Amended Complaint, liberally construed, allege[d] a claim arising under federal law as required under that provision").

Therefore, this Court should not dismiss Plaintiff's ATS allegations for lack of subject matter jurisdiction even if it decides to follow *Velez*. Rather, it should address whether Plaintiffs' allegations state a cause of action under the TVPRA. Indeed, the *Velez* court itself, did not dismiss the ATS claims asserted in that action for lack of subject matter jurisdiction. Instead, the court deemed the ATS claims to be claims under the TVPRA and analyzed the merits of those claims pursuant to the standards applicable to defendants' summary judgment motion. *See Velez*, 2010 WL 4852321, at *7.[9] As discussed below (*see* Section III.B), the facts alleged in the Complaint are sufficient to plead a claim under either the ATS or the TVPRA.

**B.      Plaintiff Has Adequately Stated Claims For Trafficking, Forced Labor, And Slavery.**

Notwithstanding Defendants' self-serving recitation of the facts, once all Plaintiff's well-pled allegations are taken as true and all reasonable inferences are drawn in Plaintiff's favor, *see Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008), it is clear that Plaintiff has adequately stated claims for violations of norms of international law under the ATS.

**1.      Slavery and Forced Labor**

Although there are many contemporary definitions of "slavery," whether a particular complaint adequately alleges slavery under international law requires consideration of a number of factors, including "control of someone's movement, control of physical environment,

---

[9] If the Court were to decide to dismiss Plaintiff's ATS claims on the basis that they are preempted by the TVPRA (which it should not), the Court should grant Plaintiff leave to amend her Complaint in order to explicitly allege that her claims also falls within the TVPRA. *See, e.g.*, Fed. R. Civ. Proc. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires.").

psychological control, measures taken to prevent or deter escape, force, threat of force or coercion, duration, assertion of exclusivity, subjection to cruel treatment and abuse, control of sexuality and forced labor." *Kunarac*, Appeal Chamber at ¶¶ 119; *see also Kunarac*, Trial Chamber at ¶ 542. Using this definiton, it is clear that Ms. Swarna has more than adequately stated a claim for slavery and forced labor under customary international law.

Ms. Swarna's allegations meet the definition embraced by *Kunarac* in virtually every respect. Among other things, Ms. Swarna alleges that Defendants: (1) controlled her movement by (among other things) confiscating her passport, refusing to let her leave their apartment except when supervised (even locking her in at times), and completely isolating her from the outside world (*see, e.g.*, Compl., ¶¶ 24, 27, 54-71; Swarna Decl., ¶¶ 24-28); (2) exerted psychological control over Ms. Swarna through use of "constant and unrelenting verbal and physical abuse" and threats of physical harm (*see, e.g.*, Swarna Decl., ¶¶ 29, 42); (3) took measures to deter her escape, by physically assaulting her and threatening her with physical force, as well as threatening the lives of her family (*see, e.g.*, Compl., ¶¶ 69-70, 74, 76, 85-88; Swarna Decl., ¶¶ 29, 35; Swarna Tr. at 28-29; (4) used "force" and "threats of force" with Ms. Swarna in the form of "physical abuse" and threats of bodily harm and death (*see, e.g.*, Compl., ¶¶ 69-70, 74, 76, 85-88; Swarna Decl., ¶¶ 29, 36-39, 42); (5) controlled her sexuality by raping her and subjecting her to "constant threat of rape" (*see* Compl., ¶¶ 80-83; Swarna Decl., ¶¶ 36); and (6) "forced" her to work for them "against [her] will" (Swarna Decl., ¶ 42).

Defendants nevertheless insist that Ms. Swarna's Complaint has not stated a claim for slavery or forced labor because Defendants paid her each month and allowed her to travel to India twice, and also because Ms. Swarna testified that she had to work to support her family. *See* MTD at 22-23. But as set forth above, Defendants never paid Ms. Swarna any money

directly, leaving her completely dependent on them for all means of support while she was living in their household.  Compl., ¶¶ 29-32.  Moreover, they only paid her husband $200-300 per month, while expecting Ms. Swarna to be on call 24 hours a day, seven days a week.  Swarna Decl. ¶ 12.  This meager, indirect pay cannot transform Ms. Swarna from "slave" to employee.[10]

Moreover, that Ms. Swarna was permitted to travel to India does not support the conclusion that she was "free" from Defendants' control.  Indeed, Ms. Swarna has alleged that Defendants threatened her and her family with physical harm and even death if she refused to return from India.  Compl., ¶¶ 75-77, 79, 81, 88-90; Swarna Decl., ¶¶ 22, 29, 35-36, 39, 42.  As she has alleged, she "believed" these threats because of Defendant Al-Awadi's position and Defendants' connections in Kuwait.  Swarna Decl., ¶ 22.  These are precisely the types of threats and psychological controls that limit a person's freedom of movement and characterize slavery and forced labor under international law and *Kunarac*.

Finally, although Ms. Swarna may have believed she needed to work to support her family, her testimony does not undermine her allegation that she nevertheless felt "forced" to remain a domestic servant in Defendants' household.  Indeed, her belief that she had no other options only supports a finding that she felt enslaved by Defendants.  Moreover, even if Ms. Swarna did genuinely fear that she would get "sent back" to India by Defendants if she refused

---

[10] Defendants cite *John Roe I v. Bridgestone Corp.*, 492 F. Supp. 2d 988 (S.D. Ind. 2007), for the proposition that payment is inconsistent with claims of slavery and forced labor.  *See* MTD at 23-24.  But multiple authorities recognize that forced labor can include both paid and unpaid work.  *See, e.g.*, *United States v. Sung Bum Chang*, 237 Fed. App'x. 985, 988 (5th Cir. 2007); *United States. v. Bradley*, 390 F.3d 145, 149 (1st Cir. 2004); *Doe v. Unocal*, 936 F. Supp. 880, 884 (C.D. Cal. 1997); *Doe I v. Reddy*, 2003 WL 23893010, at *1-2 (N.D. Cal. Aug. 4, 2003); *see also* Weissbrodt, *Slavery*, ¶ 62 at 18.  Moreover, *Bridgestone* specifically distinguished the plaintiffs' circumstances there – where they were paid legally under the country's laws and suffered no physical or other abuse – from the situation here, where Plaintiff alleges she was "fraudulently induced to come to the United States with promises of . . . .employment, but [was] then forced to work long hours under arduous conditions at illegally low wages, and . . . was sexually abused, physically beaten, and threatened."  492 F. Supp. 2d at 1011 (citing *Reddy*, 2003 WL 23893010, at *8-9).

their demands, that testimony does not undermine her other allegations demonstrating that Defendants repeatedly *refused* to send her back to India, despite "frequent" requests by Ms. Swarna for them to do so, and told her they would kill her if she did not continue working for them. *See*, *e.g.* Compl., ¶¶ 76-79, 88; Swarna Decl., ¶¶ 35-36, 39, Swarna Tr. at 28-29.  In short, Plaintiff's Complaint more than demonstrates that Defendants exercised total control, both physically and psychologically, over Ms. Swarna, and forced her to work for them.  Defendants' motion to dismiss her slavery and forced labor claims for failure to state a claim must be denied.

### 2.    Trafficking

Under the Trafficking Protocol, "trafficking" is defined as:  "

> [T]he recruitment, transportation, transfer, harboring or receipt of persons, by means of the threat or use of force or other forms of coercion, of abduction, of fraud, of deception, of the abuse of power or of a position of vulnerability or of the giving or receiving of payments or benefits to achieve the consent of the person having control of another person, for the purpose of exploitation.

*Id.* art 3.  "Exploitation" includes, among other things, "sexual exploitation, forced labour or services, [and] slavery or practices similar to slavery."  *Id.* at art 3(b).

Ms. Swarna's allegations amply state a claim for trafficking under this definition.  As her allegations demonstrate, Defendants recruited Ms. Swarna to work them by wrongful means, including by "fraud," "deception," and "abuse of a position of vulnerability," and "the giving . . . of payments or benefits to achieve the consent" of Ms. Swarna.  More specifically, Ms. Swarna alleges that she was recruited by Defendants in Kuwait, while she was still employed by Defendant Al-Shaitan's parents.  Compl., ¶¶ 14-15.  Although she enjoyed her position in Kuwait and was initially reluctant to leave, *see id.* at ¶ 16, Ms. Swarna eventually agreed to work for Defendants in reliance upon their representations that she would be given a formal contract of employment, paid $2,000 per month, given Sundays off to worship, given a paid trip to India each year, and treated well.  *Id.*, ¶¶ 17-18.  As she alleges, she was in a position of particular

vulnerability as the sole breadwinner for her impoverished family in India, and the money promised her was a substantial inducement to take the position offered by Defendants. *See id.*, ¶ 11. But all of Defendants' promises were mere "fraud" and "deception" designed to "achieve the consent" of Ms. Swarna. *See*, *e.g.*, *id.*, ¶¶ 19, 29. Indeed, when Ms. Swarna asked why she was not paid as promised, Al-Shaitan responded, that "they had only promised that amount so as to entice Ms. Swarna to come to the United States." *Id.*, ¶ 5.

Once in the United States, Ms. Swarna was subjected to "exploitation" of the worst kind. She was forced to work day and night without breaks and without any direct payment to her, forced to live on a mattress in the children's bedroom, denied access to the outside world, and "assaulted, abused, demeaned, and humiliated" by Defendants. *See*, *e.g.*, Compl., ¶¶ 28, 32-33, 38, 39-40, 49, 72-79. Eventually, she was also raped, and raped repeatedly. *Id.*, ¶¶ 80-83.

Despite these allegations, Defendants contend that Ms. Swarna has not stated a claim for trafficking because they did not use "force or legal coercion" to induce Ms. Swarna's acceptance of employment, and she "voluntarily accepted the Kuwaiti Diplomats' offer of employment and voluntarily traveled to New York." MTD at 22. But international conceptions of trafficking are not so narrow. *See* Trafficking Protocol art. 3. Nor should they be, given the many ways in which a person – particularly a person in a position of "vulnerability" like Ms. Swarna – might be deceived to travel to a different country only to discover the true intentions of her captors. Moreover, Ms. Swarna's allegations make clear that she did not "accept" the work conditions imposed on her by Defendants but instead accepted a much different offer of actual employment, which never materialized. Compl., ¶¶ 17-19, 24, 27-28. Ms. Swarna's allegations state a claim for trafficking, and Defendants' motion to dismiss those claims should be denied.

C.     **This Court Should Exercise Jurisdiction Over Plaintiff's State-Law Claims.**

Defendants argue that Plaintiff's state law claims should be dismissed because (i) they are barred by New York's statute of limitations, and (ii) the court does not have jurisdiction over these claims.  Both arguments should be rejected.

1.     **Plaintiff's State Law Claims Are Not Time-Barred.**

Plaintiff's state law claims are not time-barred.  As this Court recognized in its Default Judgment Order, "given plaintiff's claim that she was held in slavery-like captivity in the Individual Defendants' home … there are appropriate grounds for holding the statute of limitations tolled under the doctrine of equitable estoppel until the date when she escaped, June 25, 2010.  Order at 31 (citing *Zumpano v. Quinn*, 6 N.Y.3d 666 (2006); *Overall v. Estate of Klotz*, 52 F.3d 398 (2d Cir. 1995); *Zoe G. v. Frederick F.G.*, 208 A.D.2d 675 (2d Dep't 1994)).  Indeed, in her Complaint, Plaintiff catalogs the various forms of abuse suffered at the hands of Defendants, including long work hours, threats, deprivation of privacy, enforced isolation, physical abuse, psychological abuse, and rape.  (Compl.  ¶¶ 23-83).  Defendants should not be allowed interpose a statute of limitations defense when their own actions prevented Plaintiff from prosecuting her claims in a timely manner.

2.     **This Court Should Exercise Jurisdiction Over Plaintiff's State Law Claims.**

Defendants' remaining arguments hinge on this Court's dismissal of Plaintiff's federal trafficking, slavery, and forced labor claims.  But as set forth above (*see* Section III.A-B), Defendants' arguments for dismissal are without merit.  Thus, this Court should exercise jurisdiction over Plaintiff's state law claims, which arise out of the same nucleus of operative facts and therefore give rise to supplemental jurisdiction under 28 U.S.C. § 1367(a).  Defendants do not and cannot refute this statutory basis for federal court jurisdiction over Plaintiff's state-

law claims.  Thus, because dismissal of Plaintiff's federal claims is inappropriate, this Court has

jurisdiction over Plaintiff's state law claims as well.

Even if this Court were to dismiss Plaintiff's federal claim (which it should not), this

Court may exercise supplemental jurisdiction over Plaintiff's state law claims even if her federal

claim is dismissed.  "[W]hen a court grants a motion to dismiss for failure to state a federal

claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28

U.S.C. § 1367, over pendent state-law claims."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514

(2006).  The Court's exercise of supplemental jurisdiction over state claims is particularly

appropriate where, as here, "[c]onsiderations of judicial economy, convenience and fairness to

litigants make it reasonable and proper for a federal court to proceed to final judgment."  *Osborn*

*v. Haley*, 549 U.S. 225, 245 (2007) (internal citation and quotation omitted).

This case is the quintessential example of a case over which this Court should continue

to exercise its supplemental jurisdiction.  It is clear that this Court and Plaintiff have devoted

substantial amounts of time and resources to the resolution of the alleged claims.  Plaintiff filed

her first complaint against Defendants in 2002; moved for the entry of a default judgment in

2003; provided sworn testimony before a magistrate judge in 2004; initiated the instant action in

2006; again moved for the entry of a default judgment in 2008; and successfully argued against

Defendants' assertion of residual immunity before the United States Court of Appeals for the

Second Circuit.  *See* MTD at 3-4.  Also, in addition to Plaintiff's 2008 default judgment motion,

this Court has also addressed several other critical motions, including motions concerning

discovery and service of process.  Given this Court's familiarity with this action and the issues

involved, it would be "a pointless waste of judicial resources to require a state court to invest the

time and effort necessary to familiarize itself with a case well-known to the presiding federal

judge." *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 546 (2d Cir. 1989) (holding that district court did not improperly exercise jurisdiction over state law claims after dismissal of federal securities claim); *see also Dellefave v. Access Temps., Inc.*, 37 Fed. App'x. 23, 26 (2d Cir. 2002) (finding that "judicial economy favored the exercise of supplemental jurisdiction where district judge had presided over the case for more than a year and resolved several motions before plaintiff withdrew his federal claims).

Moreover, neither Plaintiff nor Defendants would be prejudiced by this Court's retention of jurisdiction over Plaintiff's state law claims.  In contrast, dismissal of Plaintiff's state claims on jurisdictional grounds forces Plaintiff to restart litigation against parties who currently reside in Cuba, and have, to date, made every effort to delay this litigation and avoid resolution of Plaintiff's claims.  In addition, the further delay that would be caused by re-filing this action in state court would add considerably to the already difficult task of collecting evidence in the possession of foreign entities and individuals residing abroad.

**IV.    <u>CONCLUSION</u>**

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.  Should the Court dismiss her federal law claims, Ms. Swarna alternatively requests that the Court retain jurisdiction over her supplemental state-law claims.

Dated: New York, New York.                    Respectfully submitted,
       March 15, 2011

                                                 DECHERT LLP
                                                 David A. Kotler
                                                 Amy L. Rudd (*pro hac vice*)
                                               Robert W. Topp


                                         By:  __/s/ David A. Kotler_____

                                               1095 Avenue of the Americas
                                             New York, NY  10036-6797
                                             Tel:  +1  212 698 3500
                                             Fax:  +1 212 698 3599

                                             *Attorneys for Plaintiff*
                                             *Vishranthamma Swarna*