USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-12-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
VISHRANTHAMMA SWARNA,

                              Plaintiff,                      06 Civ. 4880 (PKC)

                          -against-                      MEMORANDUM
                                                                               AND ORDER

BADAR AL-AWADI and HALAL MUHAMMAD
AL-SHAITAN,

                              Defendants.
-----------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Defendants Al-Awadi and Al-Shaitan have moved to dismiss pursuant to Rule 12(b)(1), Fed. R. Civ. P., arguing that this Court lacks subject matter jurisdiction under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350. The factual allegations of the plaintiff's complaint are laid out in detail in Swarna v. Al-Awadi, 607 F. Supp. 2d 509 (S.D.N.Y. 2009) and Swarna v. Al-Awadi, 622 F.3d 123 (2d Cir. 2010), and will not be recounted here. For the reasons explained below, this Court has federal question jurisdiction because plaintiff's allegations, fairly construed, would state a claim for relief under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), codified at 18 U.S.C. § 1595. Plaintiff may amend her complaint within 30 days to explicitly invoke the TVPRA.

        I.        Plaintiff's ATS Claims

        The ATS provides that "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. It is a "jurisdictional statute creating no new causes of action," but "[t]he jurisdictional grant is best read as having been enacted on the understanding

that the common law would provide a cause of action." Sosa v. Alvarez-Machain, 542 U.S. 692, 724 (2004). In order to recognize an actionable violation of the law of nations, or "customary international law," a court must find that the claim rests on a norm that is "sufficiently (i) universal and obligatory, (ii) specific and definable, and (iii) of mutual concern, to permit courts to infer a cause of action under the ATS." Abdullahi v. Pfizer, 562 F.3d 163, 173 (2d Cir. 2009).

Plaintiff asserts that subject matter jurisdiction exists under the ATS because the defendants enslaved her in violation of customary international law, made actionable under the ATS. The defendants admit that "international law proscribes slavery [and] slavery-like practices." (Def. Reply Mem. at 1.) They argue, however, that the plaintiff has not established a specific norm of international law that liability should be imposed on individuals for private enslavement of another individual which is not carried out in concert with a foreign state or under color of a foreign state's law. See Sosa, 542 U.S. at 732 n.20 ("A related consideration is whether international law extends the scope of liability for a violation of a given norm to the perpetrator being sued, if the defendant is a private actor such as a corporation or individual."). In response, the plaintiff has not cited any controlling authority recognizing such a customary international law standard. Plaintiff relies on Abdullahi, in which the Second Circuit stated that "ATS claims may sometimes be brought against private actors, and not only state officials, when the tortuous activities violate norms of 'universal concern' that are recognized to extend to the conduct of private parties—for example, slavery, genocide, and war crimes." 562 F.3d at 173. However, the court's statement was dictum, not necessary to the holding of the case. Rather, a fair reading is that the court was recounting its ATS jurisprudence and describing the holding of Kadic v. Karadzic, 70 F.3d 232, 239 (2d Cir. 1995).

In Kadic, which predated the Supreme Court's Sosa decision, the court imposed individual liability for war crimes, not slavery. Kadic held "that certain forms of conduct violate the law of nations whether undertaken by those acting under the auspices of a state or only as private individuals." 70 F.3d at 239. In differentiating those forms of conduct which do not require state action from those that do, the court relied heavily on the Restatement (Third) of the Foreign Relations Law of the United States (1986) (the "Third Restatement"). The Third Restatement is "careful to identify those violations that are actionable when committed by a state, and a more limited category of violations of 'universal concern,'" which support individual liability absent state action. Kadic, 70 F.3d at 240. The broader category of violations actionable when committed by a state includes "slavery or slave trade." Third Restatement § 702. In contrast, "slave trade" is within the category of violations supporting individual liability, but "slavery" alone is not. Id. at § 704. Kadic reveals that the Second Circuit looks to the Third Restatement in identifying customary international law norms for ATS purposes. The Third Restatement, thus, would support individual liability for slave trading but not for enslavement of one individual by another. Id. at § 704.

Judge Wesley, dissenting in Abdullahi, makes the same distinction between slavery and slave trading, also citing the Third Restatement. 562 F.3d at 206 (dissent) ("[U]nder the Restatement, while anyone may be prosecuted for engaging in the slave trade, slavery itself is only actionable against state actors."). The reason for the distinction, according to Judge Wesley, arises from the evolution of international law. Universal jurisdiction, which would support individual liability, "originated with prosecutions of piracy more than 500 years ago." Id. at 204. It was created out of necessity, "not because [piracy] is uniquely heinous but 'because of the threat that piracy poses to orderly transport and commerce between nations and because

3

the crime occurs statelessly on the high seas.'" Id. (quoting U.S. v. Yousef, 327 F.3d 56, 104 (2d Cir. 2003)). Later treaties forming the basis for customary international law "considered the slave trade akin to piracy." Abdullahi, 562 F.3d at 205. Universal jurisdiction was later extended to private actors accused of crimes against humanity such as war crimes and genocide because, "like piracy, 'there is a lack of any adequate judicial system operating on the spot where the crime takes place.'" Id. (quoting Yousef, 327 F.3d at 105). The rationale for holding individuals liable exists when the violation of a norm "occur[s] in locations where, or during times when, sovereignty, and a fortiori criminal jurisdiction, are incapable of being exercised." Unlike piracy or slave trade, domestic slavery of an individual by another individual is punishable by the sovereign where the crime takes place. See 18 U.S.C. § 1589 (making "forced labor" a crime punishable by up to 20 years in prison, or for life if certain aggravating factors are present).

The majority in Abdullahi did not decide the defendant's individual liability, having found that the conduct at issue constituted state action. Plaintiff has not cited any controlling precedent which undercuts Judge Wesley's analysis. Plaintiff cites to Doe I v. Unocal Corp., where the Ninth Circuit does suggest that "forced labor, like traditional variants of slave trading, is among the 'handful of crimes . . . to which the law of nations attributes individual liability.'" 395 F.3d 932, 946 (9th Cir. 2002). However, as the defendants point out, the Ninth Circuit voted to rehear the appeal en banc, and ordered that "[t]he three-judge panel opinion shall not be cited as precedent by or to this court or any district court of the Ninth Circuit, except to the extent adopted by the en banc court." Doe I v. Unocal Corp., 395 F.3d 978, 979 (9th Cir. 2003). Subsequently, the parties jointly moved to dismiss the appeal, and the Ninth

Circuit granted a stipulated motion to dismiss with prejudice. Doe I v. Unocal Corp., 403 F.3d 708 (9th Cir. 2005). Therefore, the Unocal decision is unhelpful.

Swarna has not argued that the allegations in the complaint constitute a violation of the norm against slave trading. Therefore, Swarna has not adequately pled a claim under the ATS, and I need not address defendants' preemption argument, nor the argument that the ATS does not apply to exclusively domestic conduct.

### II. Claims Under the TVPRA

The existence vel non of a claim under the ATS is not dispositive. Swarna requests that this Court exercise subject matter jurisdiction over her claim by treating it as if it had been pleaded under the TVPRA, and address whether it states a claim for relief under that statute. (Pl. Mem. at 17–18.) Further, Swarna requests the Court grant her leave to amend the complaint to explicitly allege that her claim falls within the TVPRA. Although Swarna did not invoke the TVPRA in her complaint, "her failure to do so is not dispositive because the underlying facts alleged . . . remain the same." Velez v. Sanchez, ___ F. Supp. 2d ___, 2010 WL 4852321, at *7 (E.D.N.Y. 2010) (deeming forced labor claims under the ATS to be claims under the TVPRA). "When the complaint pleads facts from which federal jurisdiction may be inferred, however, the insufficiency of the jurisdictional allegation is not controlling, and the action need not be dismissed." Harary v. Blumenthal, 555 F.2d 1113, 1115 n.1 (2d Cir. 1977).

The TVPRA provides a civil remedy for victims of forced labor, slavery, and involuntary servitude. 18 U.S.C. § 1595. Forced labor is defined as:

> Provid[ing] or obtain[ing] the labor or services of a person by any one of, or by any combination of, the following means-- (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2)

5

> by means of serious harm or threats of serious harm to that person
> or another person; (3) by means of the abuse or threatened abuse of
> law or legal process; or (4) by means of any scheme, plan, or
> pattern intended to cause the person to believe that, if that person
> did not perform such labor or services, that person or another
> person would suffer serious harm or physical restraint.

18 U.S.C. § 1589. The Supreme Court has defined "involuntary servitude" under 18 U.S.C. § 1584 as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." U.S. v. Kozminski, 487 U.S. 931, 952 (1988).

Defendants argue that Swarna has not adequately pled slavery, forced labor, or involuntary servitude, claiming that she did not allege that the defendants used force, but did allege that they paid her and that she was free to travel to India twice. Defendants are incorrect. The pleading requirements of slavery, forced labor, and involuntary servitude may be met where the plaintiff alleges that her labor was obtained through force or "threats of force," "threats of serious harm to . . . another person," or "threat of . . . physical injury." 18 U.S.C. § 1589; Kozminski, 487 U.S. at 952. Swarna has alleged, among other things: that "Defendants . . . threatened the safety of Ms. Swarna, her husband, and her children if she failed to return to [Defendants'] home in New York" (Compl. ¶ 69); that "Ms. Swarna believed that she and her family would be in danger if she did not return" (Id. ¶ 70); and that "Ms. Swarna made frequent requests to be sent back home to India, but these requests were refused and were accompanied by threats that if Ms. Swarna attempted to leave she and her family would be injured" (Id. ¶ 76). Furthermore Swarna has alleged that

> [o]n one occasion, Ms. Swarna attempted to leave [Defendants']
> employ and escape their home, Defendant Al-Awadi injured Ms.
> Swarna by violently throwing a suitcase at her. Both Defendants
> Al-Awadi and Al-Shaitan proceeded to hit her in the face.

6

> Defendant Al-Awadi then threateningly picked up an iron and approached Ms. Swarna as if he were going to throw it at her, causing Ms. Swarna to believe she was in imminent danger of being seriously hurt or killed.

(Compl. ¶ 77.) These allegations, along with others in the complaint, are adequate to allege slavery, forced labor, and involuntary servitude within the meaning of the TVPRA.

Defendants also argue that "trafficking" is the business of transporting persons for money to place them in slavery. (Def. Mem. at 22.) In support of this proposition, Defendants cite to one case interpreting the statute regulating trafficking of counterfeit goods, and another considering the trafficking of child pornography. Neither of these cases has application here, where the statute is unambiguous. A person who "knowingly <u>recruits</u>, <u>harbors</u>, transports, provides, or <u>obtains</u> by any means, any person for labor or services in violation of" the statutes prohibiting slavery, forced labor or involuntary servitude, is guilty of trafficking. 18 U.S.C. § 1590 (emphasis added). Swarna has alleged that she was recruited from her previous employment by the defendants, who then held her in slavery, forced labor, and involuntary servitude. She need not allege that the defendants transported her in exchange for money. Her trafficking claim under 18 U.S.C. §1590 has been adequately pled.

III. Conclusion

Because Swarna has adequately pled facts to support a claim under the TVPRA, this Court has subject matter jurisdiction under 28 U.S.C. § 1331, and defendants' motion to dismiss (Docket No. 104) is DENIED. Swarna is granted leave to amend her complaint to explicitly allege her claim under the TVPRA within 30 days.

7

The disposition of this motion renders Defendants' Motion for a Protective Order Staying Discovery Until Disposition of Defendants' Fully-Briefed Motion to Dismiss (Docket No. 110) moot, and it is therefore DENIED.

SO ORDERED.

                                              P. Kevin Castel
                                              United States District Judge

Dated: New York, New York
       May 12, 2011